## CITY OF WORCESTER *vs.* INHABITANTS OF AUBURN.

A person does not acquire a settlement by residing in a town for ten years together and paying all taxes assessed upon him for five years within said time, if during that time the town has paid for his support while confined in its workhouse, on conviction for a criminal offence.

A town which has paid money for the support of a criminal in its workhouse cannot maintain an action to recover the same from the town where he had his settlement.

METCALF, J. This action is for the recovery of expenses paid by the plaintiffs for the support of Nathaniel Elder, who is alleged to be a pauper having his lawful settlement in the town of Auburn.

It is clear, upon the facts of the case, that Elder's original settlement was in Worcester, derived from his ancestors, who resided on lands that were detached from Worcester and annexed to Auburn, by *St.* 1850, *c.* 243, which provided, § 4, that persons who had gained a settlement in Worcester by having been residents on those lands, or who derived such settlement from such residents, if they should come to want and need relief, should be relieved and supported by the town of Auburn, in the same manner as if they had gained a settlement in that town. The legal effect of that statute was to transfer Elder's settlement to Auburn. Previously to the passing of that statute, he resided on those lands until the spring of 1849, when he removed to a place which is now and always has been in Worcester, and has continued to reside there ever since. And it is admitted by the plaintiffs that he has acquired a settlement in Worcester, by residing there ten years together and paying all taxes duly assessed on him for five years (and more) within said time ; Rev. Sts. *c.* 45, § 1, *cl.* 12 ; unless he was prevented from gaining such settlement by reason of the following facts :

The said Elder, in 1856 and 1857, was twice sentenced and committed to the house of correction, and once to the city workhouse, on conviction by the police court of Worcester of being a common drunkard ; and in June 1860 he was sent to said workhouse, for six months, as a vagabond, by the same court.

The plaintiffs paid for his support while he was confined in those institutions under these sentences, upon the bills therefor being presented to them for payment.

The plaintiffs now contend that as the aforesaid support was furnished by the public authorities, Elder's settlement continues in Auburn. And the court are brought to this opinion by the cases heretofore decided.

The decisions on this subject show that a person, in order to acquire a settlement in a town by residing therein three years successively on his estate of inheritance or freehold; Rev. Sts. *c.* 45, § 1, *cl.* 4 ; or by residing therein ten years together and paying taxes, must reside thus long without receiving support or aid from the public. It is not necessary that such support or aid should be furnished by the town where the recipient thereof resides. If it is furnished by the town where he has his settlement, it prevents his gaining a settlement in the town where he resides. *Taunton* v. *Middleborough*, 12 Met. 35. The effect is the same, if the town where he resides furnishes support to him, and the town where he has his settlement, or he himself afterwards pays therefor. *East Sudbury* v. *Waltham*, 13 Mass. 460. *East Sudbury* v. *Sudbury*, 12 Pick. 1. *Brewster* v. *Dennis*, 21 Pick. 233. *West Newbury* v. *Bradford*, 3 Met. 428. Or, if he is sent from the town where he resides to a lunatic hospital, and is there supported as a pauper. *Choate* v. *Inhabitants of Rochester*, 13 Gray, 92. This last case was not decided on the ground that the insane person's three years' residence on his freehold in Rochester was interrupted by his removal to the hospital in Taunton. The decision must have been the same if he had been a resident in Taunton.

It is no objection to the conclusion at which we have arrived, that the expenses for Elder's support were incurred while he was confined on criminal processes. He was supported by the public, in the first instance. And though by the Rev. Sts. *c.* 143, §§ 15, 16, he and his kindred, if of ability, might have been required to pay those expenses from their private means, and thus have relieved the public therefrom, yet this, even if it had oeen done, would not have altered the case. When the support

was furnished in the case of *Brewster* v. *Dennis,* the pauper himself was liable to pay therefor, by *St.* 1817, *c.* 186, § 5, then in force. And in *West Newbury* v. *Bradford,* the pauper, though not by law liable, paid for the support which he had received.

It thus appears that it is the reception of needed support or aid, furnished by the public, which prevents a person from gaining a settlement, although that support may not ultimately be at the expense of the public.

But though Elder's settlement was in Auburn, when he was committed to the house of correction and to the plaintiffs' workhouse, yet the plaintiffs are not entitled to recover in this action. The payments made by them were not required of them by law, nor made at the request of the defendants. By § 16 of *c.* 143, and § 41 of *c.* 87 of the Rev. Sts. the town where Elder had his settlement, and not the town where he resided, was made liable for his support in those institutions. Those payments were therefore made voluntarily and gratuitously ; and the law will not help the plaintiffs to obtain reimbursement.

It was argued for the defendants that if Elder's settlement was in Auburn, the commitments of him to the plaintiffs' workhouse were illegal and void, because he could not, under *St.* 1837, *c.* 217, be committed to any workhouse besides that of the town where he had his settlement, and therefore the defendants were not liable for his support while confined on those commitments. The reply of the plaintiffs was, that if those commitments were void, then the plaintiffs supported Elder in their workhouse, as a pauper, and not as a convict, and the defendants were bound to pay for that support. But we have not inquired whether either of the suggested consequences would follow an illegal and void commitment to the plaintiffs' workhouse ; because we have no doubt that the commitments in question were rightly ordered and made. By Rev. Sts. *c.* 87, § 41, a vagabond might be committed to the workhouse in the town of which he was an inhabitant ; and by *c.* 143, § 6, a common drunkard or a vagabond might be committed to the workhouse in the town where he was convicted. The *St.* of 1837, *c.* 217, did not repeal either of the preëxisting statute

provisions, but merely added thereto an authority to commit to the workhouse in the town where the convict had his settlement. All these statutes were in force when Elder was committed to the workhouse in Worcester, in 1857. In 1860, his commitment was under the Gen. Sts. c. 165, § 28, which provide that a vagabond may be committed to the workhouse in the town where his conviction is had, or in the town (if in the county) where he has a settlement.

By the decision of the foregoing points, all other questions that were raised and argued become immaterial.

*Judgment for the defendants.*

*G. F. Hoar,* (*W. A. Williams* with him,) for the plaintiffs.

*F. H. Dewey & H. Williams,* for the defendants.